UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
XI DONG GAO

                                  Plaintiff,

                     -against-

GOLDEN GARDEN CHINESE RESTAURANT
INC., *et al.*

                                 Defendants.
----------------------------------------------------------X

***SUA SPONTE* REPORT &
RECOMMENDATION**
CV 13-4761 (LDW) (GRB)

**GARY R. BROWN, United States Magistrate Judge:**

      In this Fair Labor Standards Act ("FLSA") case, the undersigned has supervised targeted discovery on the issue of whether the local Chinese take-out restaurant operated by defendants grosses at least $500,000 per year, a jurisdictional requirement under FLSA.  Because, after thorough discovery on the issue, and submission of briefs by the parties, it appears that from 2006 to 2011, there is no evidence that can even raise a genuine issue of material fact on the question, the undersigned respectfully recommends that summary judgment be entered in favor of defendants on the FLSA claims, and that Court decline to exercise supplemental jurisdiction over plaintiff's state law claims

## PROCEDURAL BACKGROUND

      Plaintiff Xi Dong Gao commenced this action on August 23, 2013 against defendants Golden Garden Chinese Restaurant Inc., Ting An Zheng, and Xiu Rong Zheng, alleging unpaid overtime compensation under the FLSA, 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law ("NYLL") §§ 650 *et seq.*, and unpaid spread-of-hours violations under Title 12 New York's Codes, Rules and Regulations ("NYCRR") §§ 146 *et seq.*  Docket Entry ("DE") [1].  Plaintiff

filed an amended complaint on November 12, 2013 to add defendant Golden Garden 516, Inc. Am. Compl., DE [12].

On March 10, 2014, plaintiff filed a letter motion, seeking discovery of defendants' tax forms, wage reporting, unemployment insurance return forms, bank statements, and financial statements. DE [19]. At a conference on March 13, 2014, the Court discussed the question of whether plaintiff could prove that defendants' restaurant earned at least $500,000 in gross revenue as required under FLSA. The Court directed the parties to brief the issue. Minute Entry dated March 13, 2014. The Court then stated that it would consider issuing a *sua sponte* report and recommendation on this question if appropriate.

Defendant filed a motion to dismiss on March 17, 2014, and plaintiff responded on March 21, 2014. DE [24]; [25]. On March 25, 2014, the Court granted plaintiff's letter motion seeking discovery, DE [19], to the extent that "defendants shall produce any 941, 1040, 1120, 1096, 1099, ST-100, ST-101 tax forms for the tax years of 2006-2011 for the Golden Garden," but denied DE [19] in all other respects. The Court also denied defendants' motion for a recommendation of dismissal without prejudice to reinstatement following the production of the documents. *Id.*

Following production, defendants filed a second motion seeking a recommendation of dismissal on April 9, 2014, which included corporate defendants' tax forms as exhibits. DE [27] Ex. A ("redacted copies of the Golden Gardens' U.S. Forms 1120 from 2006 to 2011"); Ex. B ("corporate defendants' New York State Local and Quarterly Sales and Use Tax Returns (ST-100) for the period starting December 1, 2005 and February 29, 2012"). Plaintiff filed his response on April 17, 2014, which included an affidavit by the plaintiff. DE [28]. Plaintiff argued that the request for a recommendation of dismissal should be considered under the

2

summary judgment framework since the court would be required to examine facts outside the complaint. *Id.*

The Court held a status conference on May 30, 2014, where the Court asked plaintiff's counsel to identify any other discovery that plaintiff needed in connection with the $500,000 issue. DE [33]. The plaintiff requested defendants' corporate bank statements, and NYS-45 payroll tax returns. *Id.* The Court directed the defendants "to turn over personal and corporate bank statements and [NYS-45] payroll tax returns to [plaintiff] within 30 days." *Id.* The parties entered a confidentiality stipulation concerning defendants' document production, which the undersigned "so ordered." E-Order dated June 27, 2014.

Both parties sought to file additional documents. DE [37]; [38]. The Court granted both parties' applications, including plaintiff's application to file his supplement under seal. E-Order dated July 17, 2014; E-Order dated July 23, 2014. Plaintiff filed his supplemental response under seal on July 23, 2014. DE [42]. Defendants filed their supplemental documents on July 24, 2014. DE [43]. In their supplemental papers, defendants represented to the Court that they complied with the Court's May 30, 2014 Order to produce personal and corporate bank statements and corporate payroll tax returns. *Id.* They further provided these documents to the Court in their supplemental material. *Id.*

## FACTUAL BACKGROUND

Defendants Ting An Zheng and Xiu Rong Zheng operated a Chinese take-out restaurant ("Golden Garden") under corporate names Golden Garden 516, Inc. from December 1, 2006 to March 29, 2010, and Golden Garden Chinese Restaurant, Inc. beginning November 30, 2009. Am. Compl. ¶¶ 8-18, DE [12]. Plaintiff was a deliveryman who worked at Golden Garden from December 2006 to July 2011. Gao Aff., DE [28]-1. In the amended complaint, plaintiff alleges

that he regularly worked six days a week for sixty-seven hours per week at defendants' restaurant. *Id.* ¶¶ 26-28. He claims that he was compensated $1,400 per month from December 2006 to December 2007, and then $1,500 per month from December 2007 to December 2008, and $1,600 per month from December 2008 to July 2011. *Id.* ¶ 29. He further alleges that defendants failed to post U.S. and N.Y. Departments of Labor posters regarding overtime pay, *id.* ¶ 23, and failed to keep full and accurate time records for hours and wages to avoid liability for wage violations. *Id.* ¶ 30.

Defendants argue that plaintiff fails to meet the jurisdictional threshold because their Form 1120 tax returns, indicate the following: the returns report gross receipts of $107,500 for 2006, $118,624 for 2007, $126,099 for 2008, $131,863 for 2010, $138,537 for 2011.[1] DE [27] Ex. A. Furthermore, gross sales from their New York State and Local Quarterly Sales and Use Tax Returns, ST-100, when extrapolated to a fiscal year, falls far below the $500,000 amount: $100,249 for 2006, $113,416 for 2007, $123,754 for 2008, $125,760 for 2009, $125,702 for 2010, and $131,097 for 2011. *Id.* Ex. B. Finally, Ting An Zheng and Xiu Rong Zheng jointly reported income from wages fall between $34,000 to $37,000 from 2006 to 2011. *Id.* Ex. C.

In response, plaintiff submitted a letter motion, along with plaintiff's affidavit, which purportedly raise a genuine issue of material fact as to defendants' gross revenue. Gao Aff., DE [28]-1. However, much of plaintiff's "knowledge" of Golden Garden's gross revenue derives from "discussions with previous bosses at previous restaurants." *Id.* ¶ 7. According to plaintiff,

---

[1] Based on defendants' Form 1120 submissions, it is impossible to ascertain the precise gross receipts or sales that Golden Garden earned for 2009. There seems to be a period after the formation of Golden Garden Chinese Restaurant, Inc. on November 30, 2009 and before the dissolution of Golden Garden 516, Inc. on March 29, 2010 where Golden Garden was operating under both corporate names. As such, the gross receipts and sales reported on the Forms 1120 under both corporate names overlap. For tax year 2009, Golden Garden 516, Inc.'s Form 1120 reports gross receipts or sales of $73,602, and Golden Garden Chinese Restaurant, Inc.'s Form 1120 reports $105,095. In any case, the highest possible gross receipts or sales for Golden Garden in 2009 would be the sum of the reported amounts or $178,697—an amount that falls far below $500,000.

4

he became intimately aware of the policies and practices of *all* Chinese restaurants, including those of Golden Garden, based on his experience working at ten Chinese restaurants, and from the assumption that "customs, policies, traditions, practices and management procedure for the Chinese restaurant industry is [sic.] substantially the same." *Id.* ¶¶ 4-5.

Plaintiff's bald assertions raise no genuine issue of material fact. Plaintiff claims that "Defendants' 2006 through 2008 Form 1120's fail to show any salaries and wages paid to their employees including Plaintiff, who was employed by Defendants during this time." DE [28]. While plaintiff does raise some question about the reliability of defendants' tax filings, it remains impossible to show how that bears on the question of whether Golden Garden's gross revenue meet the $500,000 threshold.

The rest of plaintiff's affidavit contains similarly unsupported claims about defendants' business. Plaintiff makes such statements merely based on his "knowledge," which are merely unsupported guesses at defendants' business. *See, e.g.*, *id.* ¶ 22 ("Based on my knowledge of the Chinese restaurant industry, pick-up orders equaled delivery orders, also totaled $750.00 a day"); *id.* ¶ 23 ("Based on my knowledge the Defendants sales grossed up to $2200.00 a day."). Plaintiff sets forth no foundation as the basis of his knowledge. In short, plaintiff's affidavit raises no genuine issue of material fact for a reasonable jury to find in his favor.

Plaintiff makes several arguments in his supplemental papers. DE [42]. First, he argues that defendants' NYS-45 tax forms appear to be fabrications because the forms are not the original version, but rather a version date-stamped six months after the initiation of the lawsuit. Second, defendants' bank statements and tax forms do not reflect the true gross revenue of defendants' restaurant because defendants' bank statements show an "airtight structuring of deposits to withdrawals"; the deposits for defendants' personal account are frequently round

5

figures; and defendants engage in systematic underreporting of number of employees, their wages, and gross revenue since they had "at least nine (9) full-time and a number of part-time employees working in the restaurant during the relevant time period," but their tax returns show only two employees both making less than $5,000 per quarter. DE [42] at 1-2.

Defendants argue that the NYS-45 tax forms are not fabrications, but rather the tax documents are automatically date-stamped when defendants' accountant retrieved the information from the computer database after the initiation of the lawsuit. DE [43]. Second, defendants contend that none of plaintiff's allegations regarding unreliability of documents raises a fact issue regarding the $500,000 threshold. *Id.* Regarding the unreliability of defendants' bank accounts, defendants argue "[n]o law requires that all revenues taken by a business must be deposited in a bank account." *Id.* Rather, Golden Garden, as a local food establishment, deposits funds in a checking account for expenses that must be paid by check, and "pay cash to local supplier who typically insist upon cash payments." *Id.* Third, defendants argue that plaintiff's affidavit actually states that there were only two full-time employees working at any specific time, rather than the nine that plaintiff claims. *Id.*

## DISCUSSION

### A. Summary Judgment Standard

"If on a motion under [Federal Rule of Civil Procedure ("Rule")] 12(b)(6) or Rule 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, when a conversion into summary judgment takes place, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* The standard for

6

reasonable opportunity is "whether the appellant should reasonably have recognized that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008) (citation omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence").

The parties unquestionably received a reasonable opportunity to present material pertinent to a summary judgment motion. After the Court denied without prejudice defendants' first request for a recommendation of dismissal based on matters solely within the pleadings, defendant filed a second such motion, which included corporate defendants' tax forms as exhibits. DE [27]. Plaintiff responded to defendant's motion, stating "[t]his motion to dismiss can be treated as a motion for summary judgment because the court is looking at facts outside the complaint . . . ." DE [28]. Both parties then moved to file supplemental papers. DE [37]; [38]. The Court granted both parties' applications. E-Order dated July 17, 2014; E-Order dated July 23, 2014. Both parties then filed their supplemental papers. DE [42]; [43]. Therefore, neither party can claim that they were taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported

7

motion for summary judgment; the requirement is that there by no *genuine* issue of *material* fact." *Id.* at 247-48. Material facts are "facts that might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. Genuine means where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

For the moving party to prevail at summary judgment, it must successfully "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of any genuine issue of material fact," but there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex Corp.*, 477 U.S. at 323. For the nonmoving party to prevail at summary judgment, it must show that there "is a genuine issue of fact that requires a trial." *Anderson*, 477 U.S. at 257. However, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. In order to prevail, plaintiff must furnish "concrete" and "affirmative" evidence from which a reasonable juror could return a verdict in his favor. *Id.* The Court views all evidence in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the nonmoving party's favor. *Isabella v. Koubek*, 733 F.3d 384, 387–88 (2d Cir. 2013).

### B. Liability Under the FLSA

The FLSA provides that

> no employer shall employ any of his employees who in any workweek is engaged in commerce of in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment

8

> in excess of the hours specified at a rate of not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1) (2014).  That is, the provisions of the FLSA only apply to employees who were (1) "employed in an enterprise engaged in interstate commerce or in the production of goods for interstate commerce ('enterprise coverage')," or (2) "personally engaged in interstate commerce or in the production of goods for interstate commerce ('individual coverage')." *Shim v. Millennium Group,* No. 08–CV–4022 (FB)(VVP), 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009) (internal quotations and citations omitted).  Thus, "a plaintiff in an FLSA action must establish jurisdictional prerequisite of either enterprise or individual coverage." *Gomez v. El Rancho de Andres de Tres Inc.,* No. CV 2012–1264(CBA) (MDG), 2014 WL 1310296 (E.D.N.Y. Mar. 11, 2014).  Plaintiff is not a covered employee under the FLSA.

   1. *Individual Coverage*

Under individual coverage, plaintiffs may establish that they were personally "engaged in commerce or in the production of goods for interstate commerce" within the meaning of the FLSA.  "In making this determination, the court must 'focus on the activities of the employees and not on the business of the employer.'" *Xelos v. Mavros,* No. 03–CV–3665 (NG)(MDG), 2005 WL 2385724, at * 4 (quoting *Mitchell v. Lublin, McGaughy & Assocs.,* 358 U.S. 207, 211 (1959)).  The FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b) (2014).  "The dispositive test for FLSA coverage asks whether a plaintiff was an employee in the channels of interstate commerce, as distinguished from [one] who merely affects that commerce." *Xelos,* 2005 WL 2385724, at *4 (internal quotation marks and citation omitted).

9

In the amended complaint, plaintiff does not and cannot make a claim for individual coverage under the FLSA. For the relevant period, plaintiff worked as a deliveryman for Chinese take-out food for Golden Garden. Because he did not produce any food, nor did the food that he delivered cross state lines, he was thus not "engaged in commerce or in the production of goods for interstate commerce" within the meaning of the FLSA.

### 2. *Enterprise Coverage*

In order to qualify as an enterprise within the meaning of the FLSA, the employer must be an entity that

> [1] has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and [2] ... whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A) (2014).

The amended complaint alleges "[a]t all relevant times herein, Golden Garden is a business engaged in interstate commerce that purchases and handles goods moved in interstate commerce." Am. Compl. ¶ 9, DE [12]. Despite the deficient pleading of the first prong, several courts in this district have inferred the first prerequisite had been satisfied based on the nature of the defendant employer's business. *See, e.g.*, *Huerta v. Victoria Bakery,* No. 10 CV 4754(RJD)(JO), 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012) (inferring the requisite commerce connection and finding it "inconceivable that some of the bread-making materials did not originate out of state or that the bakery did not sell its products outside the State of New York"); *Rodriguez v. Almighty Cleaning, Inc.,* 784 F.Supp.2d 114, 118 (E.D.N.Y. 2011) (concluding it was "logical to infer ... that the cleaning supplies utilized by [janitors] originated outside of New York"); *Locke v. St. Augustine's Episcopal Church,* 690 F.Supp.2d 77,

88–89 (E.D.N.Y. 2010)(same); *Shim,* 2009 WL 211367, at *3 (Block, J.) (presuming that employees handled goods or materials moved in interstate commerce because "it is simply inconceivable that none of the ... [custodial supplies] ... originated outside of New York"). Since plaintiffs allege that defendants operate a Chinese take-out, it is reasonable to infer, given the nature of the types of foodstuffs typically used in Chinese food restaurants, that plaintiff handled goods and materials that moved in interstate commerce. Therefore, plaintiffs satisfy the first part of the enterprise coverage prong.

Here, defendants successfully identify tax forms and bank statements that demonstrate that Golden Garden generates far less than $500,000 of gross revenue per year. *cf. Jian Long Li v. Li Qin Zhao*, No. 11-CV-5636(PKC), 2014 WL 3887860, at *4 (E.D.N.Y. 2014) ("Defendants point to evidence that negates the existence of the requisite dollar volume of business, namely, the tax returns and bank account statements for China House.") (internal quotation marks omitted). Defendants' Form 1120 and ST-100 tax forms show that the highest yearly gross receipts or sales amount falls slightly less than $140,000 in tax year 2011. DE [27] Exs. A & B. Defendants' gross sales fall far below FLSA's $500,000 threshold. Indeed, it would take several multiples of the reported gross sales to meet the threshold.

Plaintiff fails to meets his burden of setting forth "specific facts showing that there is a genuine issue for trial" under Rule 56(e). *Anderson*, 477 U.S. at 256. Plaintiff first argues that defendants' tax returns are unreliable. He argues that defendants' Forms 1120 from 2006 to 2008 fails to show any salaries and wages paid to their employees. DE [28]. Plaintiff further argues that Golden Garden had at least nine full-time employees, but their tax returns show only two employees making less than $5,000 per quarter. DE [42] at 1-2.

11

Under *Anderson*, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247. The factual dispute must be genuine, meaning one where "the evidence is such that the reasonable jury could return a verdict for the nonmoving party." *Id.* While plaintiff does raise some question about the reliability of defendants' tax filings, this evidence alone does not raise a genuine factual dispute because it remains impossible for a jury to reasonably infer gross revenue of at least $500,000. Therefore, plaintiff's argument about the unreliability of defendants' tax returns raises no genuine issue for trial.

Plaintiff also attempts to defeat summary judgment by making baseless assertions about Golden Garden's gross revenue. *See, e.g.*, Gao Aff. ¶ 22 ("Based on my knowledge of the Chinese restaurant industry pick-up orders equaled delivery orders, also totaled $750.00 a day"); *id.* ¶ 23 ("Based on my knowledge the Defendants sales grossed up to $2,200.00 a day."). Such "knowledge" was allegedly derived from his "discussions with previous bosses at previous restaurants" where he became aware of purported policies and practices of all Chinese restaurants, including those of Golden Garden. *Id.* ¶¶ 4-5. Plaintiff's assertions, however, do not defeat summary judgment. Under *Anderson*, plaintiff must furnish "concrete," and "affirmative" evidence from which a reasonable juror could return a verdict in his favor. *Anderson*, 477 U.S. at 256; *see also Jian Long Li*, 2014 WL 3887860, at *4 (quoting *Anderson*, 477 U.S. at 256) ("It is not enough for Li to argue that the tax returns did not credibly report the restaurant's gross sales, when considered alongside its costs without furnishing 'concrete' and 'affirmative' evidence to support the conclusion that the restaurant's gross sales were more than $500,000 every year."). Nothing about plaintiff's mere guesses at Golden Garden's gross revenue comes close to the concrete and affirmative evidence needed to show a genuine issue of material fact.

Plaintiff's allegation that defendants' NYS-45 forms were fabricated, while material, do not raise a genuine issue for trial. Here, the parties dispute whether defendants' NYS-45 tax forms were fabricated based on the date-stamp on the tax forms. However, questioning the authenticity of defendants' NYS-45 tax forms does not create evidence such that a reasonable jury would find that defendants' gross revenue met or exceeded FLSA's $500,000 threshold. In any event, plaintiff's reliance on the date of NYS-45 tax documents does not represent the "concrete" and "affirmative" evidence needed for a reasonable jury to find in plaintiff's favor on the $500,000 issue.

Neither does the alleged unreliability of defendants' bank statements raises a genuine issue of material fact. Local food establishments such as Golden Garden often deposit funds in a checking account for expenses that must be paid by check, and pay cash for the rest. The Court agrees with defendants' argument that nothing mandates the defendants to deposit all revenues into a bank account. *See Jian Long Li*, 2014 WL 3887860, at *1 ("The amounts of money that accrued in the restaurant's bank account, however 'might not be able to show the accurate amount of [its] income because *sometimes the cash income received by the restaurant might be used to pay something without being deposited into the bank account first.*'").

In sum, defendants have successfully demonstrated the absence of any genuine issue of material fact as to whether Golden Garden makes at least $500,000 of gross sales per year. Accordingly, the undersigned respectfully recommends that defendants are entitled to summary judgment on the FLSA claim.

### C. State-Law Claims

"The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-- . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c) (2014). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity . . . in deciding whether to exercise jurisdiction." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie Mellon-Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (quoting *Cohill*, 484 U.S. at 350 n.7).

Here, should the district court dismiss plaintiff's FLSA claim—which, as demonstrated above, was not properly before this court—the only claims that remain are state labor law claims which may readily be resolved in state court. Accordingly, the undersigned respectfully recommends that the district court decline to exercise supplemental jurisdiction over plaintiff's state law claims. *See also Jian Long Li*, 2014 WL 3887860, at *8-9 (declining supplemental jurisdiction after granting summary judgment dismissing plaintiff's FLSA claims).

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that plaintiff's FLSA claim be dismissed with prejudice, and his state law claims be dismissed without prejudice to be re-filed in state court.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed with the representatives of each party.  Any written objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court of Court of Appeals.**  *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

Dated: Central Islip, New York
       December 16, 2014

                                              /s/ Gary R. Brown
                                              Gary R. Brown
                                              United States Magistrate Judge